```
               IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


HEALTH ROBOTICS, LLC, HEALTH       :
ROBOTICS NORTH AMERICA, LLC,       :
HR INVESTORS, LLC, JACK            :
RISENHOOVER, and PETER CAMP,       :
                                   :
                 Plaintiffs,       :   CIVIL ACTION
                                   :
     vs.                           :   No. 09-cv-0627
                                   :
JOHN A. BENNETT, DEVON ROBOTICS,   :
LLC, DEVON INTERNATIONAL GROUP, and:
DEVON MEDICAL, INC.,               :
                                   :
                 Defendants.       :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                               **June 16, 2009**

This dispute has been brought before the Court on motion of Defendants to dismiss Plaintiffs' Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons articulated below, Defendants' Motion to Dismiss for Improper Venue (Doc. No. 20) shall be denied.

**Background**[1]

According to the allegations contained in the Complaint, in the Spring of 2008, Plaintiffs had an exclusive agreement with a third party Italian company, Health-Robotics, Srl ("Italian

---

[1] When deciding motions to dismiss for improver venue pursuant to Rule 12 (b)(3), courts consider the factual allegations in the light most favorable to the non-moving party and thus, must accept as true the allegations in the complaint. Leone v. Cataldo, 574 F.Supp.2d 471, 483 (E.D. Pa. 2008).

1

company"), to distribute the CytoCare robot[2] in North America and other small territories.  Plaintiffs also held exclusive options, up to certain dates, to negotiate obtaining the rights from the Italian company for the exclusive distribution of i.v. Station[3] and CytoCare for monoclonal antibodies.  Based on orders received within six (6) months of the announcement of this technology, Plaintiffs expected i.v. Station to generate significant revenue. Plaintiffs hired Defendants to serve as their agents in Plaintiffs' negotiations with the Italian company to obtain the exclusive distribution rights for i.v. Station and CytoCare for monoclonal antibodies.

After this relationship was formed, Plaintiffs disclosed trade secrets and other confidential information to Defendants with the belief that Defendants would use that information to act in the best interest of Plaintiffs in the negotiations.  Without Plaintiffs' knowledge, Defendants allegedly used the confidential information to their own benefit and to harm Plaintiffs by secretly negotiating with the Italian company to become the exclusive distributor of the CytoCare robot, i.v. Station, and CytoCare for monoclonal antibodies.

In October 2008, the Italian company informed Plaintiffs of its intention to terminate its past agreement with Plaintiffs

---

[2] The world's first and only automated robotic system for preparing chemotherapy medication.
[3] The world's first and only robotic system for the preparation of non-hazardous IV Ad mixtures.

unless Plaintiffs and Defendants reached an agreement that allowed Defendants to obtain exclusive rights to the CytoCare technologies. Plaintiffs allege this action taken by the Italian company was a direct result of Defendants' actions. On October 31, 2008, the parties reached an agreement ("Agreement") to the satisfaction of the Italian company. The Agreement terminated Plaintiffs' prior contracts with the Italian company, transferred the rights to the CytoCare technologies to Defendants, and stipulated to the compensation that Defendants must provide to Plaintiffs for accepting the Agreement. The Agreement also contains a forum selection clause that states that any dispute arising out of the Agreement must be litigated in Montgomery County in the Commonwealth of Pennsylvania.

On February 13, 2009, Plaintiffs commenced suit against Defendants in the United States District Court for the Eastern District of Pennsylvania alleging breach of contract, breach of fiduciary duty and tortious interference with actual and prospective contractual relations arising out of Defendants' using confidential information to negotiate secret agreements for themselves instead of Plaintiffs. In response to this, Defendants filed a Motion to Dismiss the Complaint for improper venue and failure to state a claim upon which relief could be granted on March 5, 2009, claiming that the forum selection

3

clause covers Plaintiffs' Complaint.[4]  On March 23, 2009, Plaintiffs filed their First Amended Complaint in which they retracted their breach of contract claim but still alleged both breach of fiduciary duty and tortious interference.[5]  On March 30, 2009, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint for improper venue and for failure to state a claim upon which relief may be granted.[6]

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332.

### Standards

Although as a general rule motions to dismiss for improper venue are entertained under Fed. R. Civ. P. 12(b)(3), the Third Circuit has held that dismissal under Rule 12(b)(6) is proper where a forum selection clause designates another court as the exclusive venue for litigation.  See Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298-99 (3d Cir. 2001); Integrated Health Res., LLC v. Rossi Psychological Group, 537 F. Supp. 2d 672, 674 (D. N.J. 2008).  Traditionally, when deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court must

---

[4] On March 2, 2009, Plaintiffs filed a Motion for Leave to amend their Complaint in order to join Itochu International, Inc. ("Itochu") as a defendant. Defendants filed a response to Plaintiffs' Motion for Leave on March 13.
[5] The Court ruled that this Amended Complaint rendered Plaintiffs' Motion for Leave to Amend Itochu and Defendants' Motion to Dismiss moot.
[6] On April 14, 2009, Plaintiffs filed a Motion for Leave to add Itochu as a defendant and Defendants responded in opposition on April 24, 2009.

4

accept as true the allegations in the complaint, although the parties may submit affidavits to support their positions.  Leone v. Cataldo, 574 F.Supp. 2d 471, 483 (E.D. Pa. 2008).  In a motion to dismiss for improper venue, the defendant, as the moving party, bears the burden of showing that venue is improper.  Id. (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982); Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 418 (E. D. Pa. 2005)).

   Similarly, in evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted).  To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action and show "that the pleader is entitled to relief, in order to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Phillips, 515 F.3d at 233-34 (quoting Twombly, 127 S.Ct. at

1964).  In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint."  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).

## Discussion

**Motion to Dismiss for Improper Venue**

When forming a contract, parties have the option to select, in advance of litigation, the forum and law under which any disputes arising will be settled.  Botman Int'l, B.V. v. Int'l Produce Imps., Inc., 205 Fed. Appx. 937, 941, 2006 U.S. App. LEXIS 27114, at *9 (3d Cir. 2006).  Typically, these forum selection clauses are treated as ordinary contract provisions and are subject to the ordinary rules of contract interpretation.  See M/S Bremen v. Zapata Offshore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972); John Wyeth & Brother, Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997).  The first step in analyzing a forum selection clause is to determine whether it states the parties' intentions unambiguously.  Wyeth, 119 F.3d at 1074.  An unambiguous clause is one that is reasonably capable of only one construction.  Landtect Corp. v. State Mutual Life Assurance Co., 605 F.2d 75, 80 (3d Cir. 1979) (citing Gerhat v. Henry Disston & Sons, 290 F.2d 778, 784 (3d Cir. 1961)).  When considering unambiguous clauses in a contract,

6

the Court need only look at the writing itself to determine the parties' understanding. <u>Vaccarello v. Vaccarello</u>, 757 A.2d 909, 914, 563 Pa. 93 (Pa. 2000) (quoting <u>Carosene v. Carosene</u>, 688 A.2d 733, 735, 455 Pa.Super. 450 (Pa.Super. 1997)).  The Court can only interpret the contract as written and cannot modify the plain meaning of the words "under the guise of interpretation." <u>Id.</u>  When a clause is unambiguous, the Court will not interpret the clause in a fashion that contradicts the plain meaning of the words.  <u>Id.</u>

Defendants argue that the forum selection clause applies not only to the elements of the Agreement but also to any dispute between the parties that concerns any subject addressed in the Agreement.  Thus, Defendants contend that even though Plaintiffs' claims arise from events that took place before the existence of the Agreement, because the claims involve the distribution rights of CytoCare technology, a topic covered in the Agreement, the forum selection clause applies to this dispute.  Plaintiffs argue that the forum selection clause does not apply to the Complaint because Plaintiffs' claims are independent of the Agreement and arise from actions that took place before the existence of the Agreement.  The portion of the forum selection clause at issue in this case states:

> The sole and exclusive venue for any litigation between the parties hereto with respect to any dispute *arising out of* this Agreement is

7

>     Montgomery County in the Commonwealth of
>     Pennsylvania. (emphasis added)(Pl. First Amended
>     Complaint Ex. B at 6)

The only reasonable interpretation of this clause is that any dispute between the parties originating from the Agreement must be litigated in Montgomery County.  Parties would reasonably expect the provision to apply only to disputes over matters explicitly covered by the Agreement.  Thus, we find that the clause on its face is unambiguous and applies only to disputes "arising out of" the Agreement.  Any other reading of the clause would be unreasonable.

Having determined that the forum selection clause is unambiguous, we must next decide whether or not Plaintiffs' claims "arise out of the Agreement" and are thus covered by the terms of the forum selection clause.  Courts will not enforce a forum selection clause for a dispute that does not arise from the contract containing the clause. See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 293 (3d Cir. 1994).  If the claims asserted by the plaintiff "arise out of the contractual relation and implicate the contract's terms," the plaintiff cannot avoid the forum selection clause even by pleading non-contractual theories of relief.  Crescent Int'l Inc. v. Avatar Cmtys, Inc., 857 F.2d 943, 944 (3d Cir. 1988) (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983)).  Although not controlling upon this Court, in addressing this

8

issue the Second Circuit has defined the phrase "arise out of" to mean "to originate from a specified source" and has held that it is usually interpreted as indicating a causal connection. Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123 (2d Cir. 2001) (quoting Webster's Third New International Dictionary 117 (1986)).  Persuasively, the Second Circuit does not interpret the phrase as "encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to', be 'associated with', or 'arise in connection with' the contract."  Phillips v. Audio Active Ltd., 494 F.3d 378, 389 (2d Cir. 2007).

    Interpreting the phrase "arise out of" in the instant case, we find that the dispute does not originate from the same subject matter as the Agreement.  The subject of the dispute is merely related to the content of the Agreement and that alone is not enough to conclude that the dispute arose out of the Agreement. Additionally, there is no causal connection between the dispute and the Agreement because the Agreement only stipulates to actions that the parties must take in the future while the forum selection clause does not apply to past actions.  Since the heart of the dispute – Defendants' alleged revelation of Plaintiffs' confidential information to and secret negotiations with the Italian company – occurred prior to the existence of the

9

Agreement, it is impossible for the Agreement to have caused the dispute.

Unlike Coastal Steel or Crescent Int'l, the breach of fiduciary duty and tortious interference claims at issue here are not in reference to duties or responsibilities arising out of the Agreement.  While the parties were allegedly forced to make an agreement, the forum selection clause of the Agreement is not, by its language, controlling of Defendants' alleged prior actions.  As such, Plaintiffs' claims do not depend on the existence of the Agreement nor do they arise out of that contractual relationship.[7]

## Conclusion

Defendants' Motion to Dismiss for Improper Venue is denied because the forum selection clause in the Agreement is unambiguous and the dispute raised by Plaintiffs does not arise from the Agreement.  This suit was properly commenced in the United States District Court for the Eastern District of Pennsylvania.  An appropriate order follows.

---

[7] Plaintiffs urge the court to deny Defendants' Motion For a More Definite Statement.  Since Defendants did not actually file such a motion, the Court will not address this issue.  Additionally, in an effort to rebut Defendants' 12 (b)(6) motion, Plaintiffs argue, using tests to determine whether a claim has been stated, that they have sufficiently pled their claims.  Because Defendants argue that improper venue is the reason Plaintiffs fail to state a claim upon which relief can be granted, the Court will not address these arguments.