IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


HEALTH ROBOTICS, LLC, et al.,           :
                                        :
                Plaintiffs,             :      CIVIL ACTION
                                        :
        v.                              :      No. 09-cv-0627
                                        :
JOHN A. BENNETT, et al.,                :
                                        :
                Defendants.             :


## MEMORANDUM AND ORDER

**Joyner, J.**                                    **December 22, 2009**

This dispute has been brought before the Court on Defendant
Itochu International's Motion to Dismiss Plaintiffs' Third
Amended Complaint (Doc. No. 96) pursuant to Federal Rule of Civil
Procedure 12(b)(6).  For the reasons set forth below, Defendant's
Motion shall be GRANTED.

### Background[1]

Both sides of this case have numerous parties.  Plaintiffs
Health Robotics, LLC ("HRLLC"), Health Robotics North America,
LLC ("HRNA"), and HR Investors, LLC ("HR Investors"), are
Delaware limited liability companies with offices in the state of
Texas.  The individual Plaintiffs, Jack Risenhoover and Peter
Camp, are both members of HRLLC, HRNA, and HR Investors.

---

[1] In line with a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, all factual
allegations are viewed in the light most favorable to the non-moving party.
Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations
omitted).

1

Plaintiff Risenhoover resides in Texas, and Plaintiff Camp resides in Florida. Defendants Devon Robotics, LLC, Devon International Group, and Devon Medical, Inc. ("Devon Medical") are all Pennsylvania Corporations operating in the Commonwealth of Pennsylvania. Defendant Bennett is a Pennsylvania resident and the owner of all of these entities, which operate as an integrated enterprise and/or as alter egos of each other. Defendant Itochu International, Inc. ("Itochu") is a Japanese Corporation with its principal place of business in New York, and is registered with the Pennsylvania Department of State as a foreign corporation authorized to regularly conduct intrastate business in the Commonwealth.

At issue in this case is the distribution of three medical machines developed by Health-Robotics s.r.l., an Italian company that is not a party to this action: CytoCare, i.v. Station, and CytoCare for monoclonal antibodies. In the spring of 2008, Plaintiff HRNA was the exclusive North American distributor of the CytoCare robot, which prepares hazardous, patient-specific chemotherapy medications and other intravenous combinations, and reduces the human handling of these drugs during their preparation. HRNA also held the exclusive option, until at least August 15, 2008, to become the sole distributor of i.v. Station and CytoCare for monoclonal antibodies.

The relationship between Plaintiffs and Defendants dates

back to the spring of 2008, when Defendant Bennett approached Plaintiffs Risenhoover and Camp to inform them that Defendant Itochu was interested in partnering with Plaintiffs to distribute CytoCare, i.v. Station, and CytoCare for monoclonal antibodies. Following this discussion, Itochu and Plaintiffs did, in fact, enter into an agreement for the distribution of the CytoCare robot.  Further, Defendants and Plaintiffs allegedly agreed to become joint venturers in obtaining a distribution contract with Health-Robotics s.r.l. for the sale of i.v. Station and CytoCare for monoclonal antibodies.  In forming this relationship, Plaintiffs believed that they were becoming partners in this undertaking with Defendants and that Defendants would act as their agent in the negotiations with Health-Robotics s.r.l. Plaintiffs elaborate on this relationship by noting that Defendants had the ability to bind Plaintiffs and alter their legal obligations.  Plaintiffs further claim that in exchange for Plaintiffs providing their existing distribution network and relationship with Health-Robotics s.r.l., Defendants were to provide money to guarantee purchases from Health-Robotics s.r.l., which was a prerequisite for obtaining the distribution agreements for i.v. Station and CytoCare for monoclonal antibodies.  Finally, Plaintiff HRLLC also issued a certificate reflecting an equity interest in HRLLC to Defendant Itochu and offered such a certificate to Defendant Bennett, who requested

that the certificate be issued to Devon Medical instead.

Defendants did negotiate with Health-Robotics s.r.l., starting during the period in which HRNA still had an exclusive option to obtain the distribution contracts for i.v. Station and CytoCare for monoclonal antibodies. Plaintiffs believed, and claim that Defendants regularly reinforced the belief, that Defendants were negotiating on behalf of both themselves and Plaintiffs. Due to these assurances, Plaintiffs did not seek other partners for potential ventures with Health-Robotics s.r.l. Instead of negotiating on Plaintiffs' behalf, however, Defendants allegedly began negotiating on their own behalf and signed a distribution agreement with Health-Robotics s.r.l. soon after Plaintiff HRNA's exclusive option period expired. Defendants became the exclusive distributors of CytoCare, CytoCare for monoclonal antibodies, and i.v. Station, and Health-Robotics s.r.l. ended its business relationship with Plaintiff HRNA. Plaintiffs allege that they were further damaged by Defendants' disclosure of Plaintiffs' confidential information to Health-Robotics s.r.l.

Plaintiffs seek to recover for breach of fiduciary duty, tortious interference with prospective contractual relations, and promissory estoppel. Defendant Itochu has filed a Motion to Dismiss, claiming that Plaintiffs have not stated a claim on which relief can be granted, and seeking dismissal of all of

4

Plaintiffs' claims against it.

## Standard

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the plaintiff has failed to "state a claim on which relief can be granted." In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 283, 286 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In order to do so the plaintiff must show that his right to relief is at least "plausible." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Twombly, 550 U.S. at 570. This requires more than a "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, and the complaint must allege facts "suggestive of" the elements of the cause of action in order to survive a motion to dismiss. Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008).

## Discussion

**Breach of Fiduciary Duty**

In order to state a claim for breach of fiduciary duty, a plaintiff must show, first, that a fiduciary relationship existed

5

between the parties.  See Basile v. H & R Block, Inc., 761 A.2d
1115, 1119-1122 (Pa. 2000) (concluding that no fiduciary
relationship existed, and, therefore, the plaintiff could not
maintain an action for breach of fiduciary duty).[2]  Further, a
plaintiff must show that the defendant negligently or
intentionally failed to act in good faith or solely for the
benefit of the plaintiff in all manners for which the defendant
was employed, that the plaintiff was injured as a result of this
failure, and that the defendant's failure to act as a fiduciary
was a real factor in bringing about the injury to the plaintiff.
Dinger v. Allfirst Financial, Inc., 82 F. App'x 261, 265 (3d Cir.
2003).

In the present case, Plaintiffs allege that all Plaintiffs
were owed a fiduciary duty as a result of the parties'
participation in a joint venture and as a result of Defendants

_____

[2]For the purpose of deciding whether Plaintiffs have stated a claim on
which relief can be granted, we will apply Pennsylvania law.  A federal court
sitting in diversity is to apply the law of the forum state.  Erie R.R. Co. v.
Tompkins, 304 U.S. 64, 78-80 (1938); Schering Corp. v. Sun Ray Drug Co., 320
F.2d 72, 76 (3d Cir. 1963).  This includes the application of that state's
choice of law doctrine.  Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 496
(1941).  Although Plaintiffs chose to file this case in the Eastern District
of Pennsylvania, and have not made any argument that another state's law
should apply or even provided this Court with sufficient information to
undertake a choice-of-law analysis, Plaintiffs state that they "do not concede
that Pennsylvania law applies."  We find this statement to be frustrating, at
best.  Causes of action do not merely float in the ether, but, rather, are
jurisdictionally limited and may well vary depending on which jurisdiction's
law applies to the case.  Plaintiffs' assertion that they have stated a claim
while simultaneously refusing to identify what state's law provides them with
this claim seems more indicative of petty contentiousness than zealous
advocacy.  Given, however, that Plaintiffs themselves argue that they have
stated a claim on which relief can be granted by citing Pennsylvania law, and
given that Plaintiffs have not made any argument as to why any other state's
laws should apply pursuant to Pennsylvania's choice-of-law analysis, we will
apply Pennsylvania law for the purposes of Defendant's Motion to Dismiss.

6

agreeing to act as agents for Plaintiffs in their negotiations with Health-Robotics s.r.l.  Plaintiffs further assert that Defendants Devon Medical and Itochu owed a fiduciary duty to HRLLC as a result of their becoming members of this company.[3]  As Plaintiffs have not successfully alleged the breach of any fiduciary duty, their claim must be dismissed.

We turn, first, to the creation of a fiduciary duty by undertaking a joint venture.  A joint venturer "owes a fiduciary duty of the utmost good faith and must act toward his associate with scrupulous honesty."  <u>Snellbaker v. Herrmann</u>, 462 A.2d 713, 718 (Pa. Super. Ct. 1983).  A joint venture must be explicitly formed, and cannot be implied in law.  <u>Id.</u> at 716.  In order to form a joint venture, each party must make a contribution, the profits must be shared, and there must be mutual control of the venture.  <u>Id.</u>  Further, a joint venture generally only involves a single transaction rather than a continuing course of business. <u>Id.</u>

Plaintiffs have not sufficiently alleged that a joint venture existed between any of Plaintiffs and any of Defendants.

---

[3]Although this distinction is not entirely clear on the face of Plaintiffs' Third Amended Complaint, Plaintiffs explicitly draw this distinction in their Response to Defendant's Motion to Dismiss, and defend their Complaint on this ground.  This Court, therefore, will analyze the claim for breach of fiduciary duty on the basis of membership in the limited liability company as operating solely to create a fiduciary duty between HRLLC and Defendants Itochu and Devon Medical.

The first area of concern with Plaintiffs' Complaint[4] is that although it moves point by point through the elements of the cause of action, it merely asserts that each element is met and does not provide any context or facts that make plausible the conclusion that a joint venture was formed. Plaintiffs do not, for example, specify when and where the joint venture was formed or whether it was pursuant to a written or oral agreement. Rather, Plaintiffs simply state that this venture was formed without stating which of the five Plaintiffs and five Defendants were a part of it. Plaintiffs' allegation that the profits were to be shared is similarly devoid of any detail or factual allegations suggestive of such an arrangement. Plaintiffs provide no information as to whether all Defendants and all Plaintiffs were to participate in this profit sharing, how the profits were to be divided, or the time period during which this profit sharing was to occur. Especially in a case with so many parties to the alleged joint venture, such broad language asserting simply that Plaintiffs and Defendants were to share in the profits strikes this Court as insufficient to make such a claim plausible. Plaintiffs, therefore, have not sufficiently pled the existence of a joint venture.

---

[4]Plaintiffs have filed a Complaint as well as three Amended Complaints in this action. For brevity's sake, and because the Third Amended Complaint is the only one relevant to our consideration of Defendant's Motion to Dismiss, Plaintiffs' Third Amended Complaint will be referred to simply as the "Complaint" in this Memorandum.

In addition to failing for its complete lack of detail,
Plaintiffs' Complaint fails, as a matter of law, to plead at
least two of the elements of a joint venture. First, the
contributions that were to be made as part of the joint venture
had not yet occurred. Plaintiffs do allege that each side was to
make a contribution, with Plaintiffs supplying their existing
contracts and additional sales efforts for the new products, and
Defendants performing the negotiations and providing the money
necessary to begin distributing these new products. What this
describes, however, is more in line with the planning of a future
joint venture than the undertaking of a current joint venture.
In order to give rise to fiduciary duties, a joint venture must
actually be in progress. Plaintiffs' belief that Defendants were
going to contribute to the venture is not sufficient to create a
joint venture if Defendants did not actually contribute.
Plaintiffs claim that Defendants never did, in fact, negotiate on
behalf of Plaintiffs, nor did they provide money to secure
distribution rights for Plaintiffs; instead, Plaintiffs allege
that Defendants acted solely for themselves in these
negotiations. Given that Defendants never actually made any
contribution, no joint venture was ever created, and the parties
only had discussions about forming a future joint venture.

Plaintiffs' claim also fails in its discussion of mutual
control over the venture. Although Plaintiffs do state that

there was mutual control, they also state that Defendants were conducting the negotiations without the participation of Plaintiffs and that Defendants had the ability to alter Plaintiffs' legal rights and obligations. Indeed, Plaintiffs note that over the extensive period of negotiations between Defendants and Health-Robotics s.r.l., Plaintiffs did not receive any more than cursory updates that negotiations were proceeding. This is not indicative of a joint venture with mutual control. Because none of the facts that Plaintiffs allege are suggestive of, or even consistent with, mutual control over the venture, we cannot find that a joint venture existed.

Plaintiffs' allegations of a joint venture simply consist of a series of conclusory statements that seek to establish each element of a cause of action, but fail to provide any facts or context that can lead this Court to conclude that their right to relief is plausible. Further, the factual allegations that actually do appear in the Complaint fail to establish, and in some cases even contradict, the elements required to plead the existence of a joint venture. Plaintiffs, therefore, cannot establish that Defendants owed a fiduciary duty to Plaintiffs by virtue of any participation in a joint venture.

Plaintiffs also attempt to provide the basis for Defendants' fiduciary duty by establishing the existence of an agency relationship between themselves and Defendants. If an agency

relationship exists, a fiduciary relationship also exists, and
the agent must "act with the utmost good faith in furthering and
advancing the principal's interests." <u>Basile</u>, 761 A.2d at 1120.
To establish an agency relationship, there must be some sort of
manifestation by the principal that the agent shall act for him,
the agent must accept this responsibility, and the parties must
agree that the principal will be in control of the relationship.
<u>Id.</u>; <u>see also</u> <u>Clayton v. McCullough</u>, 670 A.2d 710, 713-14 (Pa.
Super. Ct. 1996).  The party asserting the existence of an agency
relationship has the burden of proving its existence.  <u>Basile</u>,
761 A.2d at 1120.

Plaintiffs fail to establish the existence of an agency
relationship.  Again, Plaintiffs do not provide sufficient detail
in their pleadings.  First, there is no information as to how the
agency relationship arose or which Defendants undertook to act as
agents for which Plaintiffs.  Further, Plaintiffs have not given
any indication of which Defendants accepted the agency
relationship and how they did so.  Throughout their Complaint,
Plaintiffs repeatedly act as though Plaintiffs are all one entity
and Defendants similarly operate as a single entity.  Such broad,
conclusory allegations are insufficient to establish an agency
relationship, which requires an explicit agreement between the
principal and the agent, and cannot exist as a free-flowing,
casual relationship.  Without any information regarding the

Plaintiffs' manifestation that Defendants will be their agents, Defendants' acceptance of this relationship, or even which parties were to act as agents for whom, Plaintiffs have not sufficiently pled the existence of an agency relationship.

Plaintiffs also fail to plead facts that, if true, would establish that Plaintiffs acted as a principal in their relationship with Defendants. Plaintiffs' factual allegations do not support a finding that Plaintiffs were actually in control of this relationship. Plaintiffs' Complaint states that Plaintiffs gave Defendants the power to bind them and alter their legal relationships, and asserts that Plaintiffs were unaware of what was happening in Defendants' negotiations with Health-Robotics s.r.l. Further, nowhere in Plaintiffs' Complaint do they claim to have set boundaries for the negotiations, or to have controlled Defendants' conduct in these negotiations in any manner. Indeed, all of Plaintiffs' factual allegations weigh against a finding that Plaintiffs exercised control over this relationship. Because the facts that Plaintiffs do plead fail to support a finding that an agency relationship existed, but rather are suggestive of the lack of such a relationship, this cannot form the basis for any fiduciary duty.

Finally, Plaintiffs allege that Defendants Devon Medical and Itochu owed a fiduciary duty to Plaintiff HRLLC based on their membership in HRLLC. As an initial matter, Delaware law will

apply to this portion of the dispute, as it involves the internal affairs of a foreign limited liability company.[5]  See 15 Pa. Cons. Stat. Ann. § 8581 (West 1995) (stating that the law of the state of organization applies to the internal affairs of a foreign limited partnership); id. § 8981 (applying the rules for limited partnerships to limited liability corporations).  Under Delaware law, the assignment of company interest is sufficient to make an individual or entity a member of a limited liability company.  Del. Code Ann. tit. 6, § 18-301(b)(2) (2009).  The scope and liability for breaches of fiduciary duties in a limited liability company, however, can be altered or eliminated by the company's limited liability agreement.  Id. § 17-1101(d)(2) (2009).

Plaintiffs have successfully pled that a fiduciary duty was predicated upon Defendants' membership in HRLLC.  First, the issuance of a certificate of equity was sufficient to make Defendants Itochu and Devon Medical members of the limited

---

[5]Although Defendant contends that this Court lacks subject matter jurisdiction to adjudicate a claim for breach of fiduciary duty based upon its membership in HRLLC, this argument is without merit.  Defendant cites Elf Atochem N. Am., Inc. v. Jaffari, 727 A.2d 286 (Del. Ch. 1999), and Grace v. Morgan, No. 03-5260, 2004 WL 26858 (Del. Super. Ct. Jan. 6, 2004), to provide support for its assertion.  Putting aside the question of whether a Delaware statute could divest this Court of subject matter jurisdiction over a swath of diversity cases, such an attempt was not made.  Defendant appears to misunderstand the nature of the Delaware court system.  Delaware still maintains two separate trial-level courts:  the Delaware Superior Court, which is the state's trial court with general jurisdiction, and the Delaware Court of Chancery, which has jurisdiction over cases brought in equity.  Any discussion of a "default" forum or a court with "exclusive" jurisdiction in Elf Atochem and Grace addresses only the relationship between these two separate state courts, and does not address the ability of these claims to be brought in federal court if the requirements of 28 U.S.C. § 1332 are met.

liability company.  Further, Plaintiffs state that HRLLC's
agreement creates fiduciary duties between its members and the
company.  Although Plaintiffs do not provide a copy of this
agreement, nor do they detail the full extent of this fiduciary
duty, given the common nature of fiduciary duties in these
circumstances, and given that we are bound to accept all of
Plaintiffs' factual allegations as true, the existence of a
fiduciary duty between Plaintiff HRLLC and Defendants Devon
Medical and Itochu can be described as at least plausible.
Plaintiffs, however, only assert that Defendants' membership in
HRLLC gives rise to a fiduciary duty to HRLLC.  This Court need
not, therefore, consider whether other Plaintiffs were owed a
fiduciary duty by virtue of Defendants' membership in HRLLC.
Given the existence of a fiduciary duty, we must next turn to
whether Defendants Devon Medical and Itochu breached this duty
owed to Plaintiff HRLLC.

Plaintiff HRLLC fails to allege the factors required to
state a claim for breach of fiduciary duty.  Plaintiff
sufficiently alleges that Defendants intentionally failed to act
solely for the benefit of HRLLC.  Plaintiff HRLLC, however, does
not clearly state what harm it suffered as a result of this
breach.  As noted above, Defendant Itochu only owed a fiduciary
duty to HRLLC.  HRLLC, therefore, must show that it, and not some
other Plaintiff, was harmed by Defendant's failure.  Plaintiffs'

14

Complaint is virtually silent on this issue. The harm complained
of in the Complaint is that "Plaintiffs did not seek and obtain
other partners or financing for the desired expanded contractual
relationship with [Health-Robotics s.r.l.] in reliance upon
Defendants' representations." (Third Am. Compl. 5.) It was
HRNA, however, and not HRLLC that had the contract for the
distribution of CytoCare and had the exclusive negotiation period
with Health-Robotics s.r.l. for i.v. Station and CytoCare with
monoclonal antibodies. Plaintiffs have not pled any facts that
discuss their connection with each other or even support an
inference that a harm to HRNA would also be a harm to HRLLC. As
Plaintiff HRLLC was the only entity owed a fiduciary duty, any
harm caused by a breach of this fiduciary duty must have been
suffered by HRLLC in order to provide it with a cause of action.
Given the contents of Plaintiffs' Complaint, this Court cannot
say that it is plausible that HRLLC specifically was harmed by
any breach of Defendants' fiduciary duties to it.

Plaintiffs have not established that a joint venture was
undertaken nor that an agency relationship was created. Because
Plaintiffs have not alleged the existence of a fiduciary
relationship between any of Defendants and Plaintiffs HRNA, HR
Investors, Risenhoover, or Camp, these Plaintiffs have failed to
state a claim on which relief can be granted for breach of
fiduciary duty. Further, although Plaintiffs' Complaint

sufficiently pleads a fiduciary duty between Plaintiff HRLLC and Defendants Itochu and Devon Medical, the claim for breach of fiduciary duty also fails as to this Plaintiff due to Plaintiffs' failure to plead that HRLLC suffered any harm from the alleged breach.  All of Plaintiffs' claims against Defendant Itochu for breach of fiduciary duty, therefore, are dismissed.

**Tortious Interference with Prospective Contractual Relations**

In order to state a claim for tortious interference with a prospective contractual relation the plaintiff must show that there was a prospective contractual relationship, that the defendant acted with the intent of harming the plaintiff by preventing the relationship from forming, that the defendant acted without a privilege or justification, and that the plaintiff suffered actual damages.  Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997); see also Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979).  In order to establish that there is a prospective contractual relationship the plaintiff must show "more than a mere hope" that the contractual relationship would come to fruition; he must show that there is "an objectively reasonable probability that a contract will come into existence."  Kachmar, 109 F.3d at 184.

Plaintiffs fail to successfully allege that Defendants have tortiously interfered with a prospective contractual relation, as they do not allege the existence of a prospective contractual

relationship.  As stated above, Plaintiffs must establish that there is a "reasonable probability" that the contract will be formed.  Plaintiffs ask this Court to find that a prospective contractual relationship exists due to the fact that HRNA had an existing contract with Health-Robotics s.r.l. for the distribution of CytoCare, as well as the exclusive option to negotiate for future distribution contracts of two other goods.  Plaintiffs claim that had they not been misled by Defendants, they would have actively negotiated for these contracts, and would have obtained them.  This, however, is insufficient to establish a reasonable probability that the contract would have come about.

Although Plaintiffs and Defendants both devote extensive arguments to the applicability of <u>Kachmar v. Sungard Data Systems</u>, 109 F.3d 173 (3d Cir. 1997), that was a case in which the plaintiff had already begun negotiating with a third party when the alleged interference occurred.  At the time that Defendants allegedly interfered in the instant case, Plaintiffs had not started negotiating with Health-Robotics s.r.l.  Even though the negotiations in <u>Kachmar</u> were still in the preliminary stages, the fact that the plaintiff had actually engaged in negotiations makes the analysis distinguishable from the instant case.  The Pennsylvania Supreme Court dealt with facts much more similar to the one at bar in <u>Thompson Coal Co. v. Pike Coal Co.</u>,

412 A.2d 466 (Pa. 1979).  In that case, the plaintiff had a year-to-year lease that was set to automatically renew until ten years after the lease was signed.  The defendant, however, secured the rights to the property following the end of the plaintiff's lease only seven years into the plaintiff's ten-year term.  The plaintiff attempted to bring suit for tortious interference with prospective contractual relations, claiming that defendant's conduct prevented it from continuing its relationship with the third-party lessors.  The court found, however, that although the plaintiff might have had "some expectation" of forming a contract based on his past relationship with the lessors, this was not sufficient to form a "reasonable basis" to believe that a new contract would be formed.  Thompson Coal, 412 A.2d at 471-72.  The plaintiff, therefore, did not have a prospective contractual relation with the lessors and the court did not need to reach the question of whether the defendant's conduct rose to the level of a tortious interference.

Turning to the present case, Plaintiffs plead nothing about any relationship with Health-Robotics s.r.l. other than HRNA's. If any Plaintiff had a reasonable expectation of forming a contract, therefore, it would be Plaintiff HRNA.  As did the plaintiff in Thompson Coal, Plaintiff HRNA had an existing relationship with a third party and appeared to have some expectation of continuing that relationship.  This, however, does

not rise to the level of an "objectively reasonable probability" that a future contract would come into existence. The fact that HRNA had an exclusive bargaining period during which the alleged tortious interference occurred does not change the outcome here. An opportunity to negotiate is far different from a probability that a contract will be formed, especially if negotiations have not even begun yet. Further, the fact that Health-Robotics s.r.l. may have improperly negotiated with another party during this exclusive negotiation period, or that Defendants may have acted in bad faith to secure the ability to negotiate with Health-Robotics s.r.l., is irrelevant to whether Plaintiffs had a reasonable expectation that a future contract would be formed with Health-Robotics s.r.l. Plaintiffs plead nothing to indicate more than that they had a hope that, absent Defendants' conduct, a future contract would have been formed with Health-Robotics s.r.l. In the absence of a reasonable expectation that this would be completed, however, Plaintiffs' claim must fail.

Plaintiffs do not allege that they had engaged in any negotiations with Health-Robotics s.r.l. and are able to point only to HRNA's previous contract with Health-Robotics s.r.l. and exclusive negotiation period as providing a prospective contractual relationship. As these do not provide an objectively reasonable probability that a future contract would be formed, they cannot form a prospective contractual relation with which

19

Defendants could tortiously interfere. Plaintiffs' claim against Defendant Itochu for tortious interference with prospective contractual relations, therefore, must be dismissed.

**Promissory Estoppel**

A claim for promissory estoppel requires that the plaintiff show that the defendant made a promise that he should have reasonably expected to induce the plaintiff to act or refrain from acting, that the plaintiff actually relied on the promise and either took, or refrained from taking, action, and that enforcing the promise is the only way to avoid injustice. Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). Importantly, the promise that the defendant makes and on which the plaintiff relies must be a promise to do something in the future. Commonwealth, Dep't of Pub. Welfare v. Sch. Dist. of Phila., 410 A.2d 1311, 1314 (Pa. Commw. Ct. 1980) (citing Langer v. Superior Steel Corp., 161 A. 571 (Pa. Super. Ct. 1932)). If the promise is simply a statement of present fact, the claim is one of equitable estoppel, which is not a cause of action in Pennsylvania. Id.; see also Pelaso v. Kistner, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009).

Plaintiffs have failed to state a claim for promissory estoppel. Although Plaintiffs' Complaint does state that Defendants promised to act on Plaintiffs' behalf in negotiating with Health-Robotics s.r.l., and that Plaintiffs relied on this

promise to their detriment, Plaintiffs fail to show how injustice could be avoided by enforcing the promise. Claims for promissory estoppel generally arise out of promises that are still capable of being enforced, such as to provide insurance along with a mortgage contract, e.g., Shoemaker v. Commonwealth Bank, 700 A.2d 1003, 1007-08 (Pa. Super. Ct. 1997), or not to open a competing store, e.g., Thatcher's Drug Store of West Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156, 158-59 (Pa. 1994), or to provide a certain amount of business, e.g. Crouse, 745 A.2d at 608-10. All of these are promises that can be enforced after their breach; a court can order a party to insure a client, or to refrain from opening a competing store in a particular location, or to provide the amount of business that it had promised. In the present case, however, a promise to negotiate on behalf of another party cannot be enforced after the negotiations have been completed. In this case, after reading Plaintiffs' Complaint we are unsure of how the alleged promise could be enforced so as to avoid injustice.

Further, an enforcement of Defendants' promise does not appear to be what Plaintiffs request. They do not ask that this Court set aside the negotiations between Defendants and Health-Robotics s.r.l. and order Defendants to undertake new negotiations that will be on behalf of both Plaintiffs and Defendants. Rather, Plaintiffs seek compensatory damages.

21

Damages in a promissory estoppel action, however, are limited to the amount spent in reliance on the promise.  <u>Lobolito, Inc. v. N. Pocono Sch. Dist.</u>, 755 A.2d 1287, 1292 & n.10 (Pa. 2000). Plaintiffs do not claim that they spent any money in reliance on Defendants' promise.  Instead, the only damage claimed by Plaintiffs is that they lost money that they could have otherwise made.  Such speculative damages of potential future profits are not available to Plaintiffs under a theory of promissory estoppel.

The promise at issue in this case is not one that is capable of equitable enforcement.  Further, Plaintiffs have not claimed any damages that could be awarded pursuant to a theory of promissory estoppel, nor have they pled facts that lead this Court to believe that any damages are available, regardless of whether Plaintiffs' Complaint specifically requests them.  For these reasons, Plaintiffs fail to state a claim of promissory estoppel on which relief can be granted, and Count III must also be dismissed as to Defendant Itochu.

## **Conclusion**

All of Plaintiffs' claims against Defendant Itochu must be dismissed for failing to state a claim upon which relief can be granted.  Plaintiffs have sufficiently pled the existence of a fiduciary duty only between Plaintiff HRLLC and Defendant Itochu, and, therefore, all other Plaintiffs' claims for breach of

fiduciary duty against Defendant Itochu must be dismissed. Further, Plaintiff HRLLC's claim for breach of fiduciary duty based on Defendant's membership in the company is insufficiently pled as it fails to state a harm that was suffered specifically by HRLLC. In addition, Plaintiffs have not established that there were any prospective contractual relations with which Defendant Itochu could tortiously interfere, requiring that Count II of the Complaint be dismissed. Finally, Plaintiffs have not claimed any relief that can be granted pursuant to a promissory estoppel cause of action, and Defendant Itochu's Motion to Dismiss is granted as to this count as well.